1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 12cr0918 JM |
| Plaintiff, | ORDER DENYING MOTION TO DISMISS INDICTMENT WITH PREJUDICE; DISMISSING INDICTMENT WITHOUT PREJUDICE |
| v. | |
| JEFFREY SPANIER, | |
| Defendant. | |

On remand from the Ninth Circuit, Defendant Spanier moves to dismiss the Second Superseding Indictment ("SSI") with prejudice. The Government opposes the motion and urges a dismissal of the SSI without prejudice. Having carefully considered the record before the court, appropriate legal authorities, the arguments of counsel, and for the reasons set forth below, the court dismisses the SSI without prejudice. The court also instructs the Clerk of Court to transfer this case back to District Court Judge Roger T. Benitez for all further proceedings.

## BACKGROUND

On March 9, 2012, a federal grand jury in the Southern District of California returned an indictment against Defendants James T. Miceli ("Miceli"), Douglas McClain, Jr. ("McClain"), and Jeffrey T. Spanier ("Spanier" or "Defendant") (collectively "Defendants"), charging all of them with conspiracy, in violation of 18 U.S.C. § 371; mail fraud, in violation of 18 U.S.C. § 1341 and 2; wire fraud, in violation of 18 U.S.C. § 1343 and 2; securities fraud, in violation of 15 U.S.C. §§78j(b)

and 78ff; and criminal forfeiture. The indictment also charged Spanier with money laundering of criminally derived proceeds, in violation of 18 U.S.C. § 1957.[1]

In broad brush, the indictment alleges  that Defendants engaged in a complex stock loan fraud scheme in which borrowers (executives or affiliates of publicly traded companies) were fraudulently induced to pledge stock in return for loans from a shell company located in San Diego, the Argyll Group ("Argyll"). Defendants McClain and Spanier falsely represented to borrowers that Argyll was an institutional lender with substantial cash to lend that served a niche market for stock loans.  In reliance on these representations, borrowers entered into loan agreements with Argyll in which the borrowers pledged stock they owned in publicly traded companies as collateral for loans that Defendants represented were funded with Argyll's cash reserves. Defendants also falsely represented to the borrowers that fees paid to Spanier ranged between 1% and 5% when, in truth and fact, Spanier received fees of up to 10%, which came from the sale of the borrowers' stock.

The indictment also alleges that Argyll, contrary to earlier representations, did not have cash reserves and sold the collateral to fund the loan, or to fund other loans, similar to a Ponzi scheme.  Thus, the borrowers' loans were funded with the proceeds from their own collateral or from another borrower's pledged collateral and not from an independent source of cash as represented to the borrowers. Defendants profited from this scheme by pocketing the difference between the sale price of the stock and the amount funded for the loan to the borrower.  The indictment alleges financial losses of about $100 million over a nine year period of time.

In light of the complexity of this financial fraud case, the trial court declared the case complex under the Speedy Trial Act and excluded time from September 24, 2012 until January 23, 2013.  The trial court continued the trial until May 14, 2013.  After 12 trial days, including five days of deliberations, the jury convicted McClain on all counts and acquitted Spanier on six counts and deadlocked on the remaining 22 counts.

---

[1] Prior to trial, in January 2013, Defendant Miceli committed suicide.

1    (Ct. Dkt. 212).

2          On May 31, 2013, the trial court declared a mistrial.  The Speedy Trial Act

3    required retrial within 70 days, or by August 9, 2013, absent a declaration of

4    "complexity."  United States v. Spanier, 2016 WL 278862 (9th Cir. 2016).  At the June

5    10, 2013 status conference, the Government represented that it would retry the case and

6    the trial court consulted with the parties to reschedule the retrial. The Government

7    suggested a retrial in September, but defense counsel declared that he had a prepaid

8    vacation in mid-September.  Ultimately, with the concurrence of the parties, the trial

9    court set the retrial for October 8, 2013.  Neither the parties nor the trial court

10   addressed potential issues under the Speedy Trial Act.  On August 19, 2013, the trial

11   court conducted another status conference with the parties and, with the concurrence

12   of the parties, reset the retrial to December 10, 2013.

13         The Government filed the SSI on October 18, 2013, alleging 19 counts for

14   conspiracy, in violation of 18 U.S.C. § 371; mail fraud, in violation of 18 U.S.C.

15   § 1341 and 2; wire fraud, in violation of 18 U.S.C. § 1343 and 2; securities fraud, in

16   violation of 15 U.S.C. §§78j(b) and 78ff; and criminal forfeiture.  On November 20,

17   2013, Spanier moved to dismiss the SSI for violation of the Speedy Trial Act.  On

18   December 5, 2013, the trial court denied the motion, finding that the Speedy Trial clock

19   had not begun to run "because of the complexity of the case and in view of the interests

20   of justice which outweigh other interests." (Ct. Dkt. 297 at p.7:26-27).   Trial

21   commenced on December 10, 2013, and, on December 20, 2013, the jury returned

22   guilty verdicts on all 19 Counts in the SSI.  On June 23, 2014, Spanier received a ten

23   year custodial sentence and was ordered to pay restitution in the amount of

24   $20,669,379.98.  (Ct. Dkt. 367).  Spanier presently remains on bond, as he has since

25   the commencement of this action.

26         On appeal, the Ninth Circuit concluded that the trial setting in this case violated

27   the Speedy Trial Act and that "it is impermissible for a district court to set a trial date

28   outside the prescribed speedy trial period and subsequently perform the requisite

1  balancing test for the first time." Id.  The Ninth Circuit remanded the action to this

2  court for determination of whether the SSI should be dismissed with or without

3  prejudice.

## DISCUSSION

5  A violation of the Speedy Trial Act requires dismissal of the indictment.  18

6  U.S.C. §3162(a)(2).

> In determining whether to dismiss the case with or without prejudice, the
> court shall consider, among others, each of the following factors: the
> seriousness of the offense; the facts and circumstances of the case which
> led to the dismissal; and the impact of a reprosecution on the
> administration of this chapter and on the administration of justice.

10  Id.  The Supreme Court has determined that Congress did not intend "any type of

11  dismissal to serve as the presumptive  remedy for a Speedy Trial Act violation."

12  United States v. Taylor, 487 U.S. 326, 334 (1988).  The "decision to dismiss with or

13  without prejudice [is] left to the guided discretion of the district court, and that neither

14  remedy was given priority."  Id. at 335.  Each factor, including the concept of

15  prejudice, is discussed in turn.

16  **Seriousness of the Offense**

17  The 19 counts charged in the SSI, frequently characterized as white collar

18  crimes, involve mail, wire, and securities fraud.  Each count of mail, wire, and

19  securities fraud carries a maximum custodial term of 20 years, a $250,000 fine, 3 years

20  of supervised release, criminal forfeiture, and mandatory restitution for the victims.[2]

21  The specifics of this case indicate that the complex financial fraud scheme caused

22  significant harm to hundreds of individuals in an amount that exceeds $100,000,000.

23  The sentence received by Spanier (10 year custodial sentence and restitution to the

24  victims in an amount that exceeds $20,000,000) reflects the seriousness and grave harm

25  caused by Spanier's participation in the financial fraud.

26  Spanier contends that his crimes are economic in nature and are less serious than

27  other crimes like violent or drug-trafficking crimes.   He also argues that the victims

28

---

[2] The conspiracy charges have a maximum custodial penalty of 5 years.

are successful and sophisticated executives, often represented by counsel, who are not particularly vulnerable victims. Further, Spanier argues that he was less culpable than his co-defendants.

The court finds Spanier's argument that his specific crimes are not serious to be unpersuasive. The economic crimes committed by Spanier are indeed serious and caused significant harm to hundreds of individuals. This court is well-versed in cross-border crimes involving drug-trafficking and the associated custodial sentences, and notes that the vast majority of drug crimes involve custodial sentences less than that received by Spanier. These considerations, however, do not mitigate the serious nature of the financial fraud in this case. In other words, for Spanier to argue that his financial fraud crimes are less serious than drug-trafficking crimes misrepresents the nature of his own crimes.[3] Simply stated, the jury found that Spanier engaged in a highly sophisticated and complex financial fraud over a seven year period of time, as reflected in the seriousness of the offenses charged against Spanier in the SSI.

In sum, this factor weighs in favor of dismissing the SSI without prejudice.

**Facts and Circumstances Leading to Dismissal**

The facts and circumstances surrounding the setting of the retrial do not show bad faith by any party. At the June 10, 2013 status conference, Government counsel first responded to the trial court's inquiry about retrial by stating she was "thinking of a retrial date in September," a date beyond the 70 day Speedy Trial Act period. Defense counsel responded that he had a prepaid vacation scheduled for later that month. Although defense counsel highlights in his papers that he advised the trial court he was available after September, or "earlier," there is no suggestion in the record that his reference to an "earlier" date was the result of any concern over the Speedy Trial Act. Rather, the parties inadvertently overlooked the Speedy Trial Act, as did the trial court. Ultimately, the court originally reset the trial for October 8, 2013, about

---

[3] The court notes that this argument was not pursued from Spanier's papers to oral argument.

1   two months past the Speedy Trial Act deadline.[4]

2   The record reveals that neither the parties, nor the trial court, addressed the

3   Speedy Trial Act at the time of trial setting. As noted, setting the retrial outside the

4   period dictated by the Speedy Trial Act period appears to have been the result of

5   inadvertent oversight by the parties and the trial court to consider the impact of the

6   Speedy Trial Act on the timing of the retrial. There is simply no evidence that any

7   party engaged in any conduct other than inadvertence and a desire to accommodate the

8   calendars of counsel.

9   In sum, this factor weighs in favor of dismissal of the SSI without prejudice.

10  **Impact of Reprosecution on the Speedy Trial Act and the Interests of Justice**

11  The court determines that reprosecution in this case would have no adverse

12  effect on the administration of the Speedy Trial Act because there was no deliberate or

13  knowing violation of the Act. Further, reprosecution of serious complex financial

14  fraud schemes serves the ends of justice. These considerations favor a dismissal

15  without prejudice.

16  Spanier argues that the post-hoc reasoning of the district court to exclude time

17  under the Speedy Trial Act for excludable delays (the "interests of justice" and

18  "complexity" determinations, 18 U.S.C. §3161(h)), requires application of the most

19  severe sanction, dismissal with prejudice, as in United States v. Clymer, 25 F.3d 824

20  (9th Cir. 1984), a case heavily relied upon by Spanier. The facts and circumstances of

21  Clymer merit careful analysis. Defendant Clymer, arrested on January 25, 1989, and

22  his co-defendants were originally charged with conspiracy to possess and possession

23  of methamphetamine. The pretrial proceedings were marked by extensive delay,

24  primarily as a result of the pendency of numerous pretrial motions and a two-month

25  discovery hiatus imposed by the district court. In early January 1990, Clymer's co-

26  defendants entered into plea agreements with the Government. The Government

27

28  [4] At the time of oral argument, defense counsel, highly learned and experienced, commendably conceded he also initially overlooked the mandates of the Speedy Trial Act.

offered Clymer a four-year custodial term and informed both Clymer and the court that if Clymer did not accept a plea agreement, which the prosecutor then had in hand, the Government would file a new information seeking enhanced penalties triggered by the severe sanction of 21 U.S.C. §851 (minimum mandatory sentence of 20 years) based upon a prior drug conviction.  Clymer declined to accept the plea agreement and the Government, as threatened, filed the new information.  Clymer proceeded to trial and, on July 26, 1990, the jury found Clymer guilty on two counts and acquitted him on the remainder of the counts.  He received the 20 year minimum mandatory sentence.

Clymer appealed the conviction on April 24, 1991.  However, due to a series of delays, including the appointment of two different attorneys on appeal, the Ninth Circuit did not decide the appeal until June 2, 1994.  In ruling on the appeal, the Ninth Circuit concluded that Clymer raised numerous meritorious claims on appeal but limited its discussion to the Speedy Trial Act.  There, although the district court granted three continuances based upon the complexity of the case, the Ninth Circuit concluded that only 57 of the 522 days were excludable under the Speedy Trial Act.  The Ninth Circuit also concluded that the district court failed to comply with the "ends of justice" exclusion.  The first complexity finding occurred on February 13, 1989, when the district court continued proceedings until April 10, 1989, to permit the Government to conclude its methamphetamine investigation, a 57-day continuance.  The second complexity finding came on July 13, 1989, when the Government requested a complexity declaration and the district court made such a finding without specifying how much time would be excluded as a result of this finding or when the case's complexity would terminate.  The district court made the third complexity finding on April 19, 1991, about nine months after trial.  The Ninth Circuit noted that the Government and the district court repeatedly failed to follow and satisfy the two requirements for an "ends of justice" continuance: "(1) the continuance is 'specifically limited in time;' and (2) it is 'justified [on the record] with reference to the facts as of the time the delay was ordered.'"  Id. at 828 (quoting United States v. Jordan, 915 F.2d

1  563, 565-66 (9th Cir. 1990).

2    With respect to the third factor of §3162(a)(2), the Ninth Circuit found, without

3  citation to an evidentiary record, that the "district courts and United States Attorneys'

4  offices have failed to recognize or implement our long-standing precedents. We

5  conclude that, on the facts of this case, dismissal with prejudice best comports with the

6  administration of the Act." Id. at 832-33. In other words, the Ninth Circuit expressed

7  exasperation with the Government and the district courts in general because of its

8  perception that its Speedy Trial Act rulings were being ignored. This rationale does

9  not apply under the present circumstances because there is simply no evidence before

10  this court, or suggestion, that, 22 years after Clymer, the district courts and the

11  Government repeatedly ignore the Ninth Circuit's rulings regarding the Speedy Trial

12  Act. This rationale does not support a dismissal with prejudice.

13    Spanier also argues that dismissal with prejudice, as in Clymer, advances the

14  general administration of justice. In Clymer, the Ninth Circuit concluded that a

15  dismissal with prejudice further served the general administration of justice because

16  (1) **Clymer had already been incarcerated for more than five years** (under the

17  proffered plea agreement offered by the Government he would have served only four

18  years), and (2) and he was not a central participant in the scheme to possess and

19  manufacture methamphetamine. Here, in contrast to Clymer, Spanier was released on

20  bond shortly after his arrest and he has remained on bond ever since. These

21  circumstances, unlike Clymer, do not compel a finding that dismissal with prejudice

22  would promote the general administration of justice.

23    In sum, this factor favors a dismissal of the SSI without prejudice.

24  **Prejudice**

25    Spanier argues that he has been substantially prejudiced because (1) the

26  Government used an immunized witness during the second trial and (2) the pretrial

27  restrictions interfere with his liberty interests. As to any prejudice purportedly suffered

28  by Spanier at the second trial because the Government used an immunized witness, the

12cr0918

Government provided Spanier with discovery regarding the witness, Manny Bello, and had earlier identified him as a witness at the first trial. While Bello did provide immunized testimony at the second trial (but not at the first trial), Spanier fails to articulate how Bello's testimony unfairly prejudiced him in any manner. At oral argument, Spanier suggested that the only difference between the two trials was Bello's testimony in the retrial. This argument appears to be somewhat speculative as the retrial involved only Spanier and, of course, a different jury. Finally, with respect to pretrial liberty, the court notes that Spanier remains on bond, as he has since the commencement of this case.[5] While there is no doubt that Spanier has experienced hardships since the financial fraud scheme was discovered (the seizure of bank accounts, facing foreclosure, borrowing money from family and friends, and disintegrating personal relationships), the court notes that thus far these consequences appear to be the result of Spanier's own conduct in participating in the financial fraud scheme, and not the result of any delay.

In Clymer, the Ninth Circuit determined that Clymer suffered actual prejudice in terms of both his ability to prepare for trial and in restrictions on his liberty. Specifically, one of Clymer's co-defendants had agreed to testify on his behalf but was unavailable at trial. Furthermore, Clymer had been in custody for over five years by the time the Ninth Circuit ordered his release from custody. Here, in contrast to Clymer, Spanier fails to identify any evidence or witness made unavailable on account of the delay. And, while Spanier has not been in custody except for a few weeks, his personal and financial difficulties have been attributable to his alleged wrongful conduct, not any delay in his retrial.

The court concludes that a consideration of prejudice caused by the Speedy Trial Act violation supports a dismissal without prejudice.

In conclusion, the court denies Spanier's Motion to Dismiss the Indictment With

---

[5] At oral argument, defense counsel represented that Spanier spent about two weeks in custody before bonding out.

1  Prejudice.  Pursuant to 18 U.S.C. §3162(a)(2), the court concludes that dismissal of the

2  indictment without prejudice is the appropriate remedy for the underlying Speedy Trial

3  Act violation. The SSI is dismissed without prejudice.  The Clerk of Court is also

4  instructed to transfer this case back to District Court Judge Roger T. Benitez for all

5  further proceedings.

6          **IT IS SO ORDERED.**

7  DATED:  May 11, 2016

8

9                                          Hon. Jeffrey T. Miller
                                           United States District Judge

10  cc:          All parties

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 10 -

12cr0918